This is Frankie Sue Del Papa. Counsel, you may begin. Good morning, Your Honor. My name is Paul Turner. I'm with the Federal Public Defender Office in Las Vegas. I'm representing Stephen Miller this morning. Before I start, I'd like one housekeeping item. In our opening brief, we cited the case of Jorce v. Gomez. That case, at that time, we cited for the opinion that existed then. I found out in preparing for today that that case was withdrawn and superseded by the same case at 311 F. 3rd, 1189. And actually, they went on a statutory tolling argument instead of equitable tolling. So I'd like that noted for the record. 311 F. 3rd at what page? 1189, Your Honor. Okay. Thank you. Your Honor, the United States District Court made a mistake in this case for not granting equitable tolling to Stephen Miller. As it had earlier, I might add, in the case. The first reason it was wrong is that Mr. Miller's case was summarily dismissed improperly. He should have been given a chance as a pro se litigant, indeed, as a non pro se litigant, a chance to respond to the Court's feelings that his petition was unexhausted. Was that the first dismissal? That's correct, Your Honor, in 1997. One question I have about that is whether he should have appealed if the Court were wrong. And I'm not saying that it was. Should he have appealed at that time? Your Honor, in hindsight, it would have been obviously a very good idea for him to do that. Well, more precisely, by not appealing, has he now waived that argument? I don't think so, Your Honor, because I think he was, I hate to use the word, misled. I think he was misled at that time. And I think he showed up to the Court, as you said, and certainly not intentionally by Judge Reed, but clearly the form of that order as found in the Tillema case with an identical type of order, that's an inaccurate order. When it says without prejudice, with leave to renew, if you see that look at the judgment, you see the word renew is there. And I submit that that word is very close to the reopen word, which at least in our district, is a standard procedure, that when you're, when a litigant, a habeas litigant is told that he can reopen his case, he knows he's protected, at least in our district. And the word renew and the language of the dismissal order led Mr. Miller, or any reasonable litigant, frankly, into thinking that he was okay in federal court. He had to do something in state court. And he very, very diligently did that. He followed meticulously the judge's directions. Mr. Turner, let me cut to the chase. As far as my take on this case is involved, it seems that procedural default is written all over this thing. It may be true that the judge made a mistake in taking a look at this as unexhausted. But if you look under the covers, it seems to be that this seems to be a case of procedural default. If you look back into the state to see what happens, I mean, every turn they said, you're too late, you're too late, you're procedurally defaulted. I believe, Your Honor, certainly that's a critical part of this case. You're absolutely right. Well, how do you get around procedural default? First of all, I think Mr. Miller deserves a chance to try to argue. Well, I don't know any doctrine that deserves a chance. How do you get around procedural default? Cause and prejudice is a doctrine recognized by this Court. So should we set it back and have the district court look into cause and prejudice? That would certainly be what I would suggest, Your Honor. So you're conceding procedural default and you're looking at – No. I'm sorry, Your Honor. Excuse me for interrupting you. No, I'm not conceding. Go ahead. Interrupt me any time you want. I'm not conceding procedural default. But I think it's – if this Court should rule that these matters that Declan Tolling applies, I want to contest procedural default. I want to argue cause and prejudice for Mr. Miller and get the opportunity that he lost improperly. I think that's a very important subject. I think under Murray – Tell me how you're going to get around procedural default. What's the argument? Because his lawyer – because he would have appealed in a timely manner, except that his lawyer was ineffective. Under Flores-Ortega, his lawyer did not properly advise him about an appeal. That's cause. And we have a claim in this case, of course, that says just that. And under the United States Supreme Court case in Murray and also in the – I believe the Sands case, we have a right to make that argument. That's a claim that's in this case. And we would argue that as cause. There may be other forms of cause here also, but that's a clear form of cause. That's the core of what he's saying, is that he was denied the right – his lawyer didn't give him proper advice. He didn't know he could appeal. He didn't know he had appeal right. And if we're right on that, that's cause. And he sure was prejudiced. He lost his case. If you're wrong on that, you don't get equitable tolling. Is that correct? Because you procedurally defaulted. You're just out, period. Well, the equitable tolling at this point, at least, goes to, I believe, to the exhaustion situation. But you're right. If there was an adverse ruling on – if there's a default, obviously we would also try to argue, potentially at least, adequate and independent state grounds and other – I don't know that we have such an argument. We certainly wouldn't frivolously argue it. But like any lawyer, I'd want to look over all the possibilities. But I think the cause and prejudice argument would be the core of what we'd want to do. Let me tell you what my problem is, and maybe I see it as an exhaustion case, but it gets to the same result. And that is that the district court, the first time around, seemed to me to be correct that he had not exhausted, with respect to his state habeas. He'd gone on direct review, and he had procedural default on that. But because there's this wishy-washy, potential wishy-washy situation in the Nevada law that might have given him an out on his habeas, he still had to exhaust his habeas. But he hadn't done that yet. So by the time he exhausted his habeas, he's now seven years out from his conviction, more or less, seven or eight years. You now come to this court and to the district court and say, but we want equitable tolling. I don't see the legal basis, not to mix and match the metaphors, but the legal basis for the equitable tolling, which ends him back in the same place, it seems to me, as to whether you treat it as a procedural default in which there could be no cause of prejudice. Well, what we're really fighting for is an opportunity to defend him, to make the argument. I understand. But to get there, you would need to get equitable tolling to make your argument, correct? That's right. Right now, of course, the judge has ruled we're over the one-year Federal statute. Correct. So we're out of court. Out of court. But to get into court, you need to show this extraordinary basis for the equitable tolling. That's what I'm having trouble getting my hands around as to where you find that. Well, Judge Hagan, the second Federal judge involved in this case, he ruled at one time we had equitable tolling. He felt it was unfair to Mr. Miller to have dismissed his case the way Judge Reed did. He concluded that. Then he changed it. So we now have two district judges that have two different views, which doesn't actually get us anywhere. Well, the first judge never ruled on equitable tolling, obviously. No. He said it was failure to exhaust. Right. Right. And we have one Federal judge in this case saying, first, it's equitable tolling. Fine. He then changes course for whatever reason and changes his mind. I think we have a very good argument that that order was inaccurate. I know it's inaccurate under the Tillema case of this Court. It's an inaccurate order. I'm not – and that seems to me supports an equitable tolling argument that this pro se litigant deserves the benefit of any doubt under Brown v. Roe. This pro se litigant deserves an opportunity to defend himself. He did not get that chance. And this was a summary dismissal. The Herbst v. Cook case from this Court, as Your Honors know, says that you get a chance – you get notice and an opportunity to respond if there's going to be a summary dismissal. This man had no opportunity to respond. That can't be right. It's not right. He deserves his day in court. If he loses, he loses. Hopefully he won't, but he certainly could. But we want to be able to fight for this man back in the district court, and that's what we're asking this Court for. I would also note, Thale v. Hubbard has no controlling influence in this case at all. The holding in Thale v. Hubbard is that Mr. Thale did a lousy job in Federal court, which he did, of course. I'm sure you've noticed that he was told that he was unexhausted and should go back to State court. He was told with seven months remaining on his AADPA one-year statute. He did not go back to State court like Mr. Miller did. He stayed around. He litigated it for a while and eventually went back when it was too late. That's Mr. Thale's fault. Mr. Miller did something totally different. And I might add that there's absolutely no reason to not apply equitable tolling to an unexhausted petition. We know now from the AADPA you can dismiss claims that are unexhausted. I had one dismissed a month ago. It's a very real possibility. The Federal court has a jurisdictional interest in an unexhausted claim, clearly under the AADPA. And I don't think Thale has any applicability here at all. You have about a minute remaining. Would you like to save it for rebuttal? I would, Your Honor. Thank you. Okay. We'll hear from the other side. Thank you, Counsel. If it pleases the Court, my name is David Neidert. I'm a Deputy Attorney General. And starting where Mr. Turner left off, Thale seems to directly apply, because the issue in Thale are what options are really available when a petitioner presents a completely unexhausted petition to the Federal court. Thale was completely unexhausted. Here it appears that there was nothing to exhaust. And that's what your courts told this petitioner. There's nothing to exhaust. You're too late. You're too late. You're too late. And so if there's nothing to exhaust, that's different from Thale, isn't it? Well, if that's the case, then, as I argued in the brief, then Coleman v. Thompson kicks in immediately. And perhaps what Judge Reed should have done in 1997 is anticipated that and said the claims are going to be procedurally default. It didn't. So why shouldn't we send it back to see if there was a procedural default and if there's cause and prejudice to overcome that? Well, it's because, if you're right, procedural default has never been looked at by anybody. And Judge Hagan, in his ruling dismissing this case, my answer to this case argued procedural default. I'm sorry. I didn't catch that. My answer to when I filed my answer in the district court, I argued that the claims were procedurally defaulted. Because the Nevada Supreme Court has expressly said these claims are procedurally defaulted. And Judge Hagan did not rule on procedural default. So there we go again. There's been no federal ruling on procedural default. And that's correct. But I believe that. . . So I ask you again. . . Why shouldn't we send it back to have somebody rule on procedural default so that the other side is given an opportunity to demonstrate cause or prejudice? Because you'd still have to give him equitable tolling for the first time he was in federal court. And to do that is to basically reward his own ignorance of the law in not starting with the Nevada Supreme Court. But the judge ruled it was unexhausted without even a hearing. Nobody was given an opportunity to explain that. And if there was nothing to exhaust it, it's arguably exhausted. I think it's because the judge could look at it and see the guy had never gone into the Nevada courts at all to do anything. He filed an extraordinarily untimely state notice of appeal which failed to vest jurisdiction with the Nevada Supreme Court. So that didn't stop anything. He waited until basically two months, approximately two months, before his one year under AEDPA would have kicked in for him to be totally untimely. And then he rushes into federal court with two grounds and two grounds only, both of which are unexhausted. So Judge Reed had no choice. He could have done two things, as Mr. Turner said. He could have denied the petition on the merits or he could dismiss it. The stay in abeyance procedure which this court has adopted really couldn't kick in at all because if you look at the stay in abeyance cases, it talks about dismissing the unexhausted claims, leaving the exhausted claims pending while you go back to state court and then bring them back in. The federal judge said these are unexhausted claims, right? Right. Sent them back and the Nevada Supreme Court said what? The Nevada Supreme Court said these claims are untimely under Nevada's procedural default rule. Said there's nothing to exhaust. So then you argue procedural default. And I guess, going back to where I was before, what's the problem with sending this back to look at procedural default which nobody has ever looked at? I think, Your Honor, and I go back to what I was saying, I think it goes back to essentially rewarding Mr. Miller for not doing what he should have done first, and that's go to the state courts first. Mr. Miller had gone to the state courts. He probably, and I'm sure that the state courts would rule exactly as they would have, but he filed a state petition in 1997 instead of a federal petition in 1997. We wouldn't be here arguing timeliness today because his state post-conviction petition, he filed a state post-conviction petition in February 1997, would have stopped the clock. He chose to file a federal petition, and the United States Supreme Court has said when you're in federal court, the federal statute of limitations keeps on running. He made the choice of what court to go to. It was his, to use the cliche, and I use it in the brief, ignorance of the law is no excuse. He went to the wrong court. Which was what? He went to the United States District Court instead of the United States Supreme Court. It told him to go back. And what else did it say? It also told him that once he exhausted it, he could come back. So who's ignorant of the law there, the district court judge or the petitioner? I wouldn't call Judge Reed ignorant of the law. I'd say Judge Reed probably was not anticipating Duncan v. Walker, which was decided four years later. I'm not going to presume any federal judge doesn't know the law. The point is the petitioner did what the federal court told him to do. And I've not disputed that. There's a second ground that this court certified. I said, hey, if he's entitled to equitable tolling while he's in federal court, we're not even going to argue the statutory. We conceded that issue. The only issue is whether by going into federal court first in February of 1997, the first petition, which contained only unexhausted claims, if by doing that his time limit run out in June of 1997. But let me ask you, this is a practical matter. It did seem that he had something to exhaust because he hadn't proceeded with his state habeas petition, correct? That's correct. And the Nevada court might have said we're going to give you a pass on the one year because of equity or whatever. Right. Nevada's rule is similar to the federal rule in that you can overcome Nevada's procedural default rules by showing good cause and actual prejudice in the state court. But then the state court said no, there was a procedural default, and there was no cause and prejudice. So they really ruled on both of those, correct? That's correct. So I guess my question is, if we were to give federal tolling and let him bring his habeas claim, in other words, to go back, how would he overcome the bar against habeas review when there's been an independent and adequate state ground, you know, in other words, would we, as a matter of law, would he end up inevitably exactly in the same place? He could very well be. This is a... Not could he very well. I want you to tell me from the standpoint of federal habeas law as it intersects with Nevada law, would he be absolutely barred on an independent state ground, or would he be permitted to argue cause and prejudice? Well, and I'm not sure whether, without looking at the record, whether he's actually already argued cause and prejudice or not. Procedurally what happened in this case is after an amended petition was filed, I filed an answer that raised several defenses. I raised that it was untimely. I raised that it was a claim for procedurally default. The first two claims being expressly procedurally defaulted under Nevada's timeliness procedural default rule, and the third claim presumptively procedurally defaulted because it would fall into the same posture as the two claims that the Nevada Supreme Court expressly found to be procedurally defaulted. And then I briefly addressed the merits. Judge Hagan, when he ruled on this case, and I believe... You know what? I have no idea what your answer to my question is. Maybe I'm missing something, but my question... And maybe I didn't understand your question. If he goes back, is he automatically barred because there's an independent state ground in terms of timeliness, or would he have the option to argue cause and prejudice to get him out of that? He wouldn't be automatically barred. I mean, if this case went back, and what I'm saying, and I'm not sure without looking at the record whether he's already tried to overcome that procedural default or not... He has in state court, but not federal court. And then he would have a chance to try to overcome the procedural default in federal court and show cause and prejudice or a fundamental miscarriage of justice to do that. So if it went back, basically where we would be at that point in time is this Court's rejection of Judge Hagan's ruling with respect to the timeliness argument, but the procedural default argument would still be on the table. It's already been raised. It just has not been ruled upon by Judge Hagan. Do you have anything else you'd like to sum up with, counsel? No. I think that the bottom line with this case is the state's position that if a petitioner files in the wrong court, with a completely unexhausted petition, as Mr. Miller did, then his ignorance of the law by going to the wrong court is not an extraordinary circumstance beyond his control that would entitle him to equitable tolling. And since he's not entitled to statutory tolling, according to the United States Supreme Court, then unfortunately for Mr. Miller, despite Judge Reed's inability to foresee Duncan v. Walker, he's just out of luck. His petition was untimely. Judge Hagan correctly ruled, and this petition and his appeal should be denied. Thank you, counsel. We appreciate your help. Mr. Turner. Very briefly, Your Honor. One thing that's clear, cause and prejudice is a federal issue. It's not a state issue. It's not subject to the state. There's no deference to state law on that issue. It's a federal question. What did the Nevada Supreme Court do with 34-726-1? I'm sorry. In this case or? Yeah. Yes. They said his appeal was untimely. Well, I'm sorry. They said his post-conviction petition was untimely under that rule. And they gave him no relief under 34-726-1. Right. And so what you're saying is that's not binding on the federal court? No, that's not binding at all on the federal court. Anyway, also, just for the record, there's a 34.800, which is a five-year laches. And that's, he's over five, he was well over five years even then. So his chance of success in state court is zero, basically. Was he still? Close to zero, as you can guess. Was he still pro se when he was before the Nevada court? Was. He didn't get a lawyer, he had a lawyer on him. In the federal court. Right. Exactly. You wouldn't be rewarding Mr. Miller for anything. He's entitled to fair play in federal court, whatever he did in state court. He's entitled to fair play in federal court. That's the way our system works. It wouldn't be a reward. He's entitled to his day in court, and that's all we're asking for. Thank you. Thank you, counsel. Thank you, both of you. The case just argued is ordered submitted. And as soon as the tables are clear, we'll move on to the next case, which is.
judges: Meskill, Trott, McKeown